IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT MICHAEL FREEMAN, #2230812 | § | |
| VS. | § | CIVIL ACTION NO. 6:19cv601 |
| DIRECTOR, TDCJ-CID | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

Petitioner Robert Michael Freeman, a prisoner confined within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to § 2254 challenging his Smith County, Texas, conviction. The petition was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. For the for the foregoing reasons, Petitioner Freeman's petition should be denied, and the case should be dismissed with prejudice.

**I. Procedural History**

In October 2018, after entering an open guilty plea, Freeman was sentenced to forty-five years' imprisonment for one count of robbery, (Dkt. #12, pg. 9). Freeman pleaded "true" to the enhancement paragraph. He did not file a direct appeal. Freeman filed a state habeas application on March 5, 2019, which was denied without a written order on September 4, 2019. *Id*. at pg. 2. This timely federal petition follows.

**II. Freeman's Habeas Claims**

Freeman maintains that his trial counsel was ineffective for advising him to enter a plea. He further argues that his rights under the Fourth Amendment were violated because there was no

1

warrant to search his premises and that he was never given his *Miranda* rights. He explains that a reduction in his sentence to twenty years' imprisonment would "appease" him. (Dkt. #1, pg. 7).

## III. Respondent's Answer

After being ordered to do so, Respondent filed an answer addressing Freeman's claims. Respondent urges this Court to deny the habeas petition because Freeman failed to show that the state court's adjudication of his claims was objectively unreasonable.

## IV. Standard of Review

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

To show that trial counsel was ineffective, Freeman must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the

already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

**V. Discussion and Analysis**

Freeman's petition should be denied. He failed to demonstrate that the state court's adjudication of his claims was unreasonable or contrary to federal law. Freeman waived several of these claims by virtue of entering a plea.

1. Habeas Petitions and Guilty Pleas

Because Freeman entered a guilty plea, the Court should first address his guilty plea. A guilty plea will be upheld on habeas review if the plea was entered into knowingly, voluntarily, and intelligently. *See Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). Whether a plea is knowing turns on whether the defendant understood the consequences of his plea; the defendant must have a full understanding of "what the plea connotes and of its consequences." *Hernandez*, 234 F.3d at 255. If a criminal defendant understood the charge against him and the potential punishment for the offense charged—and voluntarily pleaded guilty—then the plea will be upheld. *See James v. Cain*, 56 F.3d 662, 666-67 (5th Cir. 1995).

With respect to voluntariness, the question becomes whether the plea was induced by threats or improper promises. *Montoya*, 226 F.3d at 405; *see also U.S. v. Nunez*, 539 F. App'x 502, 503 (5th Cir. 2013) ("Whether a plea is knowing looks to whether the defendant understands

4

the direct consequences of his plea, while voluntariness looks to, inter alia, whether the plea was induced by threats or improper promises."). The Supreme Court has explained:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970).

Firm declarations in open court, including a plea colloquy, carry a strong presumption of verity. *See United States v. Perez*, 690 F. App'x 191, 192 (5th Cir. 2017) (Mem.) ("A defendant's solemn declarations in open court carry a strong presumption of truth.") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). As a result, the petitioner faces the heavy burden of proving that he is entitled to relief through overcoming the evidence of his own words. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *see also United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (to be entitled to an evidentiary hearing on a claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third witness.").

Crucially, when a criminal defendant enters a voluntary guilty plea, he waives all non-jurisdictional defects. *See United States v. Celestine*, 546 F. App'x 346, 347 (5th Cir. 2013) (unpublished). Challenges are limited to issues of whether the guilty plea was voluntary and knowing, and the Supreme Court succinctly explains the rationale:

> [A] guilty plea represents a chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense for which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea…

*Villreal v. Davis*, 2020 WL 1659895, at *13 (S.D. Tex. Mar. 30, 2020) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Here, in his federal petition, Freeman does not contend that his guilty plea was involuntary. A review of the state court records shows that on October 5, 2018, Freeman was sentenced after entering an open guilty plea before Judge Russell, (Dkt. #12, pg. 38). He signed the waiver of a jury trial, an agreement to stipulate testimony, an agreed punishment recommendation to enter an open plea, the acknowledgment of admonishments, and a stipulation of evidence. *Id*. at pg. 43-47. The record further reflects that Freeman was fully admonished of the consequences of his plea and advised on the range of punishment—and proceeded to enter a plea, at which point the plea was accepted. *Id*. at pg. 38.

While Freeman is not claiming that his plea was involuntary or unknowing in his federal petition, he raised this claim in his state habeas application. The Texas Court of Criminal Appeals denied the application without a written order. The implicit rejection of his claims is entitled to deference under the AEDPA—even if the state habeas court failed to enter findings of fact and conclusions of law. The failure to enter express findings of fact does not preclude deference under the AEDPA because "[a]s a federal court, we are bound by the state habeas court's factual findings, both implicit and explicit." *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *see also Becerril v. Quarterman*, 2007 WL 1701869 *4 (S.D. Tex.—Houston Jun. 11, 2007) ("The Texas Court of Criminal Appeals adopted the trial court's findings when it denied relief. A federal court is bound by the state habeas court's factual findings, both implicit and explicit.") (citation omitted).

In Texas, when the Court of Criminal Appeals denies a state habeas petition—with or without an order or opinion—the "denial" means that the court addressed and rejected the merits of a particular claim. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claims merits."); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim.").

Here, the Texas Court of Criminal Appeals denied Freeman's state habeas application. Accordingly, the state court addressed and rejected the merits of these habeas claims—irrespective of whether the state habeas court entered explicit findings. Those findings and conclusions are entitled to a presumption of correctness on federal habeas review and the petitioner has the burden of overcoming this presumption. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

28 U.S.C. § 2254(e)(1) provides the following:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under this statute, then, only one avenue exists in which a federal court can ignore state fact findings: When the petitioner rebuts the presumption of correctness by clear and convincing evidence. Because the court denied relief on the merits of Freeman's claims, he is bound by section 2254 and must show that the state court's adjudication of his claims resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law—as established by the Supreme Court or resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007).

7

Here, however, Freeman failed to overcome the presumption of correctness. Freeman fails to identify any facts demonstrating that he was unaware of the charges against him or the range of punishment, which was a fine not to exceed $10,000.00 and imprisonment within TDCJ for "life or any term of not more than ninety-nine (99) years or less than five (5) years." *Id*. at pg. 45. He failed to overcome the evidence of his own words during the plea hearing and sentencing; likewise, he failed to show that the state adjudication of this claim—the implicit finding that his plea was voluntary—was unreasonable or contrary to federal law. Any claim that Freeman's guilty was involuntary should be dismissed.

2. Ineffective Assistance of Counsel

Freeman next insists that trial counsel was ineffective for advising him to plead guilty. Specifically, he maintains that counsel told him "that if [he] took my case to jury trial that [he] would be 'hung' and that pleading guilty was 'the only way to go,'" (Dkt. #1, pg. 6). Freeman elaborated further in his state habeas application—contending that trial counsel "made a strategic decision not to present evidence of [his] mental problems stating that it may do more harm than good," (Dkt. #12, pg. 17). He explains that counsel believed that "there was no other strategy other than plead for mercy." *Id*. at pg. 18.

As mentioned, Freeman must show both deficient performance and ensuing prejudice. He has met neither prong. It is well-settled that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill-chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). Counsel's strategic decisions are given heavy deference and should not be second-guessed. *See United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *see also Yohey v. Collins*, 985 F.2d 222,

8

228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second-guess legitimate strategic choices."); *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) ("Informed strategic decisions of counsel are given a heavy measure of deference and will not be second guessed."). Moreover, an informed decision to forgo presenting "double-edged" evidence—one that could either help or harm a defendant—is reasonable trial strategy. *See Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003) ("This Court has repeatedly denied claims of ineffective assistance of counsel for failure to present 'double edged' evidence where counsel has made an informed decision not to present it.").

Here, Freeman complains about trial counsel's advice and strategy, which was to enter a plea. He concedes that this was counsel's "professional judgment," (Dkt. #12, pg. 17). Freeman also explained that trial counsel remarked that presenting certain evidence "may do more harm than good," which is a classic example of trial counsel strategy and a reasonable decision to forgo presenting "double-edged" evidence. The record establishes that, without a plea, Freeman faced a maximum sentence of life imprisonment. His resulting sentence, forty-five years because of his plea, discredits any claim that he would have instead proceeded to trial rather than enter a plea. *See Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985) ("In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Because Freeman is raising claims concerning legitimate trial strategy—coupled with his failure to show that his plea was involuntary—these claims should be dismissed.

3. Search and Seizure and *Miranda*

Freeman further maintains that his rights under the Fourth Amendment were violated when officers conducted an illegal search and seizure. He argues that "there was no search warrant

9

provided upon entry" and that "officers then threated [him] with a higher bond if [he] didn't allow them to search [his] premises," (Dkt. #1, pg. 6). Freeman also contends that he was never read *Miranda* rights, as "at no point in time during my first visit [sic] initial contact with the arresting officers or my duration of incarceration in county jail was I given the right to exhaust my lawful 6th Amendment rights." *Id*. at pg. 7.

However, Freeman waived these claims by virtue of entering a plea. When a criminal defendant enters a voluntary guilty plea, he waives all non-jurisdictional defects—which include claims regarding an arrest and *Miranda*—in the proceedings leading to a conviction. *Celestine*, 546 F. App'x at 347; *see also Brown v. Butler*, 811 F.2d 938, 950 (5th Cir. 1987) (explaining that a guilty plea waives claims regarding *Miranda* violations); *Norman v. McCotter*, 765 F.2d 504, 511 (5th Cir. 1985) (holding that the illegal searches and seizures were non-jurisdictional defects waived by a knowing and voluntary guilty plea). Freeman failed to demonstrate that his plea was involuntary and, as a result, he waived these claims when he entered a voluntary plea.

Freeman's Fourth Amendment claim is not only waived by virtue of his plea, but is also foreclosed under *Stone v. Powell*, 428 U.S. 464 (1976). Fourth Amendment claims are not cognizable under federal habeas review if the petitioner had a full and fair opportunity to litigate his Fourth Amendment claims. *See Stone*, 428 U.S. at 494 ("In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained during an unconstitutional search or seizure was introduced at trial."); *see also Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir.), *cert. denied*, 484 U.S. 933 (1987) ("We need not spend much time addressing appellant's Fourth Amendment concerns, for appellant does not allege, nor does

our independent review of the record indicate, that appellant did not have a full and fair opportunity to litigate his Fourth Amendment claim in state court.").

The opportunity, regardless of whether it is acted upon at the state level, is all that is required to preclude federal habeas review. *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981). Crucially, even errors in adjudicating Fourth Amendment claims are not an exception to *Stone's* bar. *See Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). Here, Freeman had the opportunity to fully and fairly litigate his Fourth Amendment challenge in state court—thereby precluding this claim. Because Freeman's Fourth Amendment and *Miranda* challenges are waived by virtue of Freeman's plea, along with his Fourth Amendment challenge precluded by *Stone*, both claims should be dismissed.

## VI. Conclusion

Freeman's federal habeas petition should be denied, and the case be dismissed with prejudice. He failed to demonstrate that the state court's adjudication of his habeas claims is unreasonable or contrary to federal law. Moreover, his claim of ineffective assistance of counsel is without merit—and he waived his remaining claims by entering a voluntary plea.

## VII. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to

determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Freeman failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the above-styled application for the writ of habeas corpus be denied, and the case dismissed with prejudice. It is further recommended that Petitioner Freeman be denied a certificate of appeal *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*

So ORDERED and SIGNED this 26th day of January, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE